**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**NATIONAL WILDLIFE FEDERATION**,

Plaintiff,

v.

**MATTHEW LOHR; SONNY PERDUE**,

Defendants.

Civil Action No. 19-cv-2416 (TSC)

---

## <u>MEMORANDUM OPINION</u>

Plaintiff National Wildlife Federation ("NWF") challenged a 2020 Final Rule from the Natural Resource Conservation Service ("NRCS"), claiming that NRCS changed its policy regarding pre–1996 wetland certifications in violation of the Administrative Procedure Act ("APA"), the Endangered Species Act ("ESA"), and the National Environmental Policy Act ("NEPA"). This court granted Plaintiff's motion for summary judgment and denied Defendants' cross motion, holding that Plaintiff had standing and that the 2020 Final Rule violated the APA because NRCS changed its policy without providing a reasoned explanation. The court therefore vacated the 2020 Final Rule and remanded the case to NRCS.

Defendants moved to alter the judgment, asking the court to remand the case to NRCS without vacating the 2020 Final Rule to minimize disruption to the agency and the community while NRCS issues a new rule. Having considered the record and the briefs, the court will DENY Defendants' Motion to Alter Judgment, ECF No. 47.

## I.     LEGAL STANDARD

"Federal Rule of Civil Procedure 59(e) provides a limited exception to the rule that judgments are to remain final," *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018), by granting courts "discretion" to alter or amend a judgment under a limited set of circumstances, *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam).  A court should grant a Rule 59(e) motion only if it "finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting *Firestone*, 76 F.3d at 1208).  "No manifest injustice exists . . . 'where a party could have easily avoided the outcome, but instead elected not to act until after a final order had been entered.'"  *Morrissey v. Mayorkas*, 17 F.4th 1150, 1160–61 (D.C. Cir. 2021) (quoting *Ciralsky*, 355 F.3d at 673).  Granting a Rule 59(e) motion is "an extraordinary measure."  *Leidos, Inc.*, 881 F.3d at 1217 (citation omitted).

## II.     ANALYSIS

Under the APA, a "reviewing court *shall*" "hold unlawful and *set aside* agency action, findings, and conclusions found to be" "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A) (emphases added).  Thus, "ordinary practice" "is to vacate unlawful agency action."  *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1050 (D.C. Cir. 2021) (citation omitted); *accord Env't Def. Fund v. FERC*, 2 F.4th 953, 976 (D.C. Cir. 2021) (citation omitted) (vacatur is the "normal remedy" (citation omitted)).  Courts are "not without discretion," however, "to leave agency action in place while the decision is remanded for further explanation."  *Standing Rock Sioux Tribe*, 985 F.3d at 1051 (citation omitted).  *But see Comcast Corp. v. FCC*, 579 F.3d 1, 10–11 (D.C. Cir. 2009)

(Randolph, S.J., concurring) (arguing that, under the plain text of the APA, courts must vacate any unlawful administrative action).

"The decision whether to vacate depends on 'the seriousness of the order's deficiencies'" and "the disruptive consequences of an interim change that may itself be changed." *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993) (citation omitted). The seriousness of a deficiency "is determined at least in part by whether there is 'a significant possibility that the agency may find an adequate explanation for its actions' on remand." *Standing Rock Sioux Tribe*, 985 F.3d at 1051 (citation omitted). But if "an agency bypasses a fundamental procedural step, the vacatur inquiry asks not whether the ultimate action could be justified, but whether the agency could, with further explanation, justify its decision to skip that procedural step." *Id.* at 1052. For example, the D.C. Circuit has held that "deficient notice is a 'fundamental flaw' that almost always requires vacatur." *Oglala Sioux Tribe v. U.S. Nuclear Regul. Comm'n*, 896 F.3d 520, 536 (D.C. Cir. 2018) (citation omitted).

The disruptive consequences factor, moreover, "is weighty only insofar as the agency may be able to rehabilitate its rationale for the regulation." *Comcast Corp.*, 579 F.3d at 9. This analysis accounts for economic disruption, but that harm is "not commonly a basis, standing alone, for declining to vacate agency action." *Standing Rock Sioux Tribe*, 985 F.3d at 1051 (citation omitted). Applying this factor, the D.C. Circuit declined to vacate unlawful agency action in *Sugar Cane Growers Cooperative of Florida v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002), concluding that vacatur would have invited "chaos" with "no apparent way to restore the status quo ex ante."

Defendants will not suffer manifest injustice if the 2020 Final Rule is vacated pending remand. First, NRCS's action was seriously deficient. NRCS did not give an explanation for the

alleged change in policy because they claimed they did not change their policy at all.  *See* Mem. Op., ECF No. 44 at 20–21.  The court consequently held that NRCS violated the APA by failing to engage in reasoned decisionmaking.  *See id.*  Defendants have not given any indication as to how they will substantiate this change in policy on remand, or why they think this new policy is sound as a matter of law, instead simply asserting that they "will be able" to redress the failure "while reaching the same result."  *See* Mot. to Alter J., ECF No. 47 at 5 ("Motion") (citation omitted).  Although a lack of reasoned decisionmaking is not always a "fundamental" procedural error, it was here because no explanation at all was given for the change in policy.  *See Standing Rock Sioux Tribe*, 985 F.3d at 1052.

Second, Defendants have not demonstrated that disruptive consequences must flow from vacatur.  Although Defendants persuasively argue that being forced to re-certify pre–1996 wetland determinations while a new rule is pending may be burdensome, *see* Decl. of Jason Outlaw, ECF No. 47-1 ¶ 20 (estimating 2,575 requests that may require a new wetland determination), NRCS has temporarily placed a "hold on servicing certain new wetland determination requests" affected by this litigation, U.S. Department of Agriculture, *Notice CP-778: Certified Wetland Determinations*, ECF No. 49-1 at 1.  Defendants argue that this hold is only in place while NRCS "determines how that processing should occur in compliance with the Court's order," Reply Br. in Supp. of Defs.' Mot. to Alter J., ECF No. 50 at 7 ("Reply"), but give no reason why NRCS could not continue that hold for the "9–12 months" it will take to "publish a new Interim Final Rule," Decl. of Jason Outlaw ¶ 41.

Remanding without vacatur also risks disruptive consequences to the environment.  As the court has already acknowledged, NRCS's change in policy has "allowed producers to drain and farm more wetlands."  Mem. Op. at 18 (quoting AR001334).  Thus, if the 2020 Final Rule is

not vacated pending remand, wetlands may be improperly destroyed in the interim—a scenario in which there would be "no apparent way to restore the status quo ex ante," *Sugar Cane Growers Coop. of Fla.*, 289 F.3d at 97.  Defendants argue that preserving these wetlands may "undermine[] the certainty" of farmland transactions and operations while a new rule is pending, Mot. at 8, but these potential economic harms are not alone enough to require remand without vacatur, *see Standing Rock Sioux Tribe*, 985 F.3d at 1052.

Finally, Defendants could have—and should have—raised their challenge to vacatur at the summary judgment stage.  Plaintiff explicitly requested vacatur several times in its Amended Complaint and its summary judgment briefing.  Am. Compl., ECF No. 24 ¶¶ 9, 16; *id.* Prayer for Relief ¶ 5; Mem. in Supp. of Pl.'s Mot. for Summ. J., ECF No. 27-1 at 35, 62 ("NWF respectfully requests that the Court vacate NRCS's arbitrary and capricious policy."); Pl.'s Combined Opp'n to Defs.' Cross Mot. for Summ. J. & Reply in Supp. of Pl.'s Mot. for Summ. J., ECF No. 31 at 45.  Defendants chose not to respond to that request in any of its briefs.  "No manifest injustice exists . . . 'where a party . . . elected not to act until after a final order had been entered.'"  *Morrissey*, 17 F.4th at 1160–61 (citation omitted).  That is precisely the path Defendants have taken here.

Defendants premise their motion on their view that, in cases where the parties did not brief the remedy, the court should apply a less stringent standard in determining whether vacatur of a procedurally deficient rule is proper.  Mot. at 2 (citing *AARP v. U.S. EEOC*, 292 F. Supp. 3d 238, 241–42 (D.D.C. 2017); additional citations omitted).  In *AARP*, 292 F. Supp. 3d at 241, however, the parties did not address remedy at all in their briefs, and when the court asked each side about remedy at oral argument, "neither party discussed its position in much detail."  Consequently, the court concluded that *AARP* was "different from the common situation in

which a moving party seeks to make an argument that it could have made previously." *Id.* at 241–42. In this case, by contrast, Plaintiff explicitly requested vacatur, and Defendants chose not to respond to that request. Now that the court has granted Plaintiff what it requested—and what Defendants did not contest would be the proper remedy if it prevailed—Defendants challenge the remedy that it should have responded to earlier on. *See Morrissey*, 17 F.4th at 1160–61.

Defendants argue that they could not have known whether they wanted to request remand without vacatur "[u]ntil the Court issued its decision" because a violation of the ESA or NEPA may have been more difficult to redress on remand than a violation of the APA. Reply at 3. That argument is not wholly without merit, as the appropriateness of a remand without vacatur depends in part on the nature of the legal violation. But Defendants do not explain why they did not at least preserve a remand without vacatur argument in their summary judgment briefing. *See, e.g.*, *Friends of the Cap. Crescent Trail v. Fed. Transit Admin.*, 218 F. Supp. 3d 53, 59–60 (D.D.C. 2016) (Rule 59(e) motion provided additional facts in support of remand without vacatur, which was raised in initial briefing). The traditional Rule 59(e) standard therefore applies to this case.

Even if the court applied a less stringent standard, however, the outcome would be the same. As the court has explained, neither factor that could tip the balance in favor of remand without vacatur—a lack of serious deficiency in the agency's decision and a showing of disruptive consequences from vacatur—applies here. *Supra* at 3–4. Remand without vacatur is not warranted in this case.

### III.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Alter Judgment, ECF No. 47, will be DENIED.  An Order will accompany this Memorandum Opinion.

Date: October 8, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge